United States District Court
Southern District of Texas
**ENTERED**
July 20, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID EUGENE SPATES, SPN #00283945, | § § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. H-22-2460 |
| SHERIFF ED GONZALEZ and HARRIS HEALTH DEPARTMENT, | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

The plaintiff, David Eugene Spates (SPN #00283945), has filed a Prisoner's Civil Rights Complaint under 42 U.S.C. § 1983 ("Complaint") (Docket Entry No. 1) against Harris County Sheriff Ed Gonzalez and the "Harris Health Department," alleging that he was denied adequate medical care at the Harris County Jail. Spates, who represents himself, has supplemented his Complaint with Plaintiff's More Definite Statement ("Plaintiff's MDS") (Docket Entry No. 7). Because he is a prisoner who proceeds in forma pauperis, the court is required to scrutinize the Complaint and dismiss the case if it determines that the action is "frivolous or malicious;" "fails to state a claim on which relief may be granted;" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). After considering all of the pleadings, the court concludes that this case must be dismissed for the reasons explained below.

## I. Background

Spates was admitted to the Harris County Jail (the "Jail") most recently on August 20, 2020.[1] He is facing capital murder charges in Case No. 1687086, which is pending in the 176th District Court for Harris County.[2]

Spates has filed this lawsuit against Sheriff Ed Gonzalez and the Harris Health Department ("Harris Health") regarding medical care that he received at the Jail.[3] Spates states that he tested positive for COVID-19 on September 19, 2020,[4] when he was 58 years of age.[5] Spates alleges that he experienced "extreme shortness of breath, fever of 104°, severe [d]iahrrea, [v]omiting, [l]oss of [his] sense of taste and smell, [l]oss of appetite, and [d]ehydration."[6] Spates contends that he should have been transferred to a hospital immediately due to his age and his history of asthma and chronic obstructive pulmonary disease

---

[1] Plaintiff's MDS, Docket Entry No. 7, p. 1 (Response to Question 1). For purposes of identification, all page numbers reference the pagination imprinted on each docket entry by the court's Electronic Case Filing ("ECF") system.

[2] Id. at 1 (Response to Question 3A).

[3] Complaint, Docket Entry No. 1, p. 3.

[4] Id. at 4.

[5] Plaintiff's MDS, Docket Entry No. 7, pp. 3-4 (Response to Question 5A).

[6] Id. at 4-5 (Response to Question 5D).

-2-

("COPD").[7]  Instead, medical providers at the Jail kept him confined to a cell and treated him with Tylenol and Pedialyte.[8]

As a result of the refusal to send him to the hospital, Spates reports that he has experienced short-term memory issues and lingering shortness of breath.[9]  Spates contends that Sheriff Gonzalez is liable for failing to provide him with adequate care for COVID-19 at a hospital because he is in charge of the Jail.[10] Spates also contends that Harris Health, as an entity that provides medical care, is liable for the decision made by Jail medical personnel to not transport him to the hospital after he tested positive for COVID-19.[11]  Invoking 42 U.S.C. § 1983, Spates seeks compensatory damages from the defendants for denying him adequate medical care in violation of his civil rights.[12]

## II.  Standard of Review

Federal courts are required by the Prison Litigation Reform Act ("PLRA") to screen prisoner complaints to identify cognizable claims or dismiss the action if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. See

---

[7]Complaint, Docket Entry No. 1, p. 4.

[8]Plaintiff's MDS, Docket Entry No. 7, p. 5 (Response to Question 5E).

[9]Id. at 5 (Response to Question 6).

[10]Id. at 5-6 (Response to Question 7).

[11]Complaint, Docket Entry No. 1, p. 3.

[12]Id. at 4.

Crawford-El v. Britton, 118 S. Ct. 1584, 1596 (1998) (summarizing provisions found in the PLRA, including the requirement that district courts screen prisoners' complaints and summarily dismiss frivolous, malicious, or meritless actions); see also Coleman v. Tollefson, 135 S. Ct. 1759, 1761-62 (2015) (discussing the screening provision found in the federal in forma pauperis statute, 28 U.S.C. § 1915(e)(2), and reforms enacted by the PLRA that were "'designed to filter out the bad claims [filed by prisoners] and facilitate consideration of the good'") (quoting Jones v. Bock, 127 S. Ct. 910, 914 (2007)) (alteration in original).

A complaint is frivolous if it "'lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 112 S. Ct. 1728, 1733 (1992) (quoting Neitzke v. Williams, 109 S. Ct. 1827, 1831 (1989)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." Harper v. Showers, 174 F.3d 716, 718 (5th Cir. 1999) (citations and internal quotation marks omitted). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." Talib v. Gilley, 138 F.3d 211, 213 (5th Cir. 1998) (citation omitted).

To avoid dismissal for failure to state a claim, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974. A reviewing court must "'accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff.'" Heinze v. Tesco Corp., 971 F.3d 475, 479 (5th Cir. 2020) (citation omitted). But it need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Id. (internal quotation marks and citations omitted); see also White v. U.S. Corrections, L.L.C., 996 F.3d 302, 306-07 (5th Cir. 2021) (same). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965).

Because the plaintiff represents himself, his pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam). Even under this lenient standard a plaintiff must allege sufficient facts which, when taken as true, state a claim for relief that is plausible on its face. Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016) (citation omitted). A district court may summarily dismiss a pro se litigant's lawsuit "before service of process or before the filing of the answer" if it is satisfied that the plaintiff has pleaded his "best case." Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009) (citations omitted).

### III. Discussion

#### A. Claims Against Sheriff Gonzalez

Spates sues Sheriff Gonzalez as the official in charge of the Harris County Sheriff's Office, which operates the Jail, alleging that Sheriff Gonzalez had the ultimate responsibility for his health and welfare.[13] However, Spates does not allege facts showing that Sheriff Gonzalez had any personal involvement in his medical care or the treatment decisions that were made after Spates tested positive for COVID-19. "Personal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Absent personal involvement or any other facts that would give rise to supervisory liability, Spates fails to state a claim upon which relief can be granted against Sheriff Gonzalez. See Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). Therefore, the claims against Sheriff Gonzalez will be dismissed under 28 U.S.C. § 1915(e)(2)(B).

#### B. Claims Against Harris Health

Spates claims that Harris Health is liable under 42 U.S.C. § 1983 because providers at the Jail refused to transfer him to the hospital after he tested positive for COVID-19.[14] Harris Health, which is also known as the Harris County Hospital District, is a

---

[13]Plaintiff's MDS, Docket Entry No. 7, p. 6 (Response to Question 7).

[14]Complaint, Docket Entry No. 1, p. 3.

-6-

public hospital system that was created to provide medical care to indigent residents of Harris County. See Tex. Const. art IX, § 14; Tex. Health & Safety Code § 281.002; see also Vaughn v. Harris County Hospital Dist., Civil Action No. 4:17-cv-02749, 2022 WL 1165146, at *1 (S.D. Tex. April 20, 2022). Because Harris Health qualifies as a political subdivision or instrumentality of the State of Texas, courts have found that it is immune from suit under the Eleventh Amendment. See Huynh v. Harris Health Systems, Civil Action No. 4:12-cv-3730, 2014 WL 1379912, at *4 (S.D. Tex. April 8, 2014); Alfred v. Harris County Hosp. Dist., Civil Action H-15-0569, 2016 WL 3847158, at *2 (S.D. Tex. Jan. 7, 2016), aff'd 666 F. App'x 349 (5th Cir. 2016) (per curiam); United States v. Harris County Hosp. Dist., Civil Action No. 4:20-CV-0296, 2023 WL 1426880, at *3 (S.D. Tex. Jan. 31, 2023); see also Harris County Hosp. Dist. v. Tomball Regional Hosp., 283 S.W.3d 838, 849 (Tex. 2009) (concluding that the Harris County Hospital District was entitled to governmental immunity from suit and dismissal for lack of jurisdiction).

Unless expressly waived, the Eleventh Amendment bars an action in federal court by a citizen of a state against his or her own state, including a state agency. See Will v. Michigan Dep't of State Police, 109 S. Ct. 2304, 2309 (1989). Texas has not waived its Eleventh Amendment immunity and Congress did not abrogate that immunity when it enacted 42 U.S.C. § 1983. See NiGen Biotech, L.L.C. v. Paxton, 804 F.3d 389, 394 (5th Cir. 2015) (citing Quern

v. Jordan, 99 S. Ct. 1139, 1145 (1979)). Because Harris Health is entitled to immunity from a suit for monetary damages, Spates's claims against this defendant must be dismissed.[15] See 28 U.S.C. § 1915(e)(2)(B).

### C. Claims Against Harris County

To the extent that Spates's Complaint could be construed as raising a claim against Harris County, a municipal entity is not vicariously liable under a theory of respondeat superior for wrongdoing committed by its employees. See Monell v. Dep't of Social Services of City of New York, 98 S. Ct. 2018, 2036 (1978) ("[W]e conclude that a municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.") (emphasis in original). To state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege

---

[15] Spates may have intended to name the Harris County Jail Medical Department as a defendant. As a department within the Harris County Sheriff's Office, which is itself a division of Harris County, the Harris County Jail Medical Department lacks capacity to be sued as required by Fed. R. Civ. P. 17(b). See Tramble v. Harris County Jail Medical, Civil Action No. H-20-4380, 2022 WL 221527, at *4 (S.D. Tex. Jan. 25, 2022) (citations omitted); see also Potts v. Crosby Ind. Sch. Dist., 210 F. App'x 342, 344-45 (5th Cir. 2006) (per curiam) (upholding dismissal of claims against the Harris County Sheriff's Department on the grounds that, as a "non sui juris division of Harris County," it lacked the capacity to be sued) (citing Darby v. Pasadena Police Dep't, 939 F.2d 311, 313 (5th Cir. 1991)). For reasons discussed further below, Spates also fails to state a claim against Harris County or any individual medical provider employed at the Jail.

facts identifying "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Pineda v. City of Houston, 291 F.3d 325, 328 (5th Cir. 2002); see also Monell, 98 S. Ct. at 2037-38.

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citations omitted). To demonstrate that a custom or policy exists, a plaintiff must show either "a pattern of unconstitutional conduct . . . on the part of municipal actors or employees," or that "a final policymaker took a single unconstitutional action." Zarnow v. City of Wichita Falls, Texas, 614 F.3d 161, 169 (5th Cir. 2010) (emphasis in original). Spates, who takes issue with an isolated incident, does not allege facts that are sufficient to establish a policy or to state a claim for relief against Harris County as a municipality. See Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 847 (5th Cir. 2009) ("A municipality is almost never liable for an isolated unconstitutional act on the part of an employee; it is liable only for acts directly attributable to it 'through some official action or imprimatur.'") (quoting Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001)). Accordingly, Spates fails to state a claim against Harris County.

Likewise, the allegations found in Spates' pleadings are insufficient to show that he was denied adequate medical care by any particular provider employed at the Jail with deliberate indifference to a serious need under the legal standard that applies to pretrial detainees. See Hare v. City of Corinth, Mississippi, 74 F.3d 633, 639 (5th Cir. 1996) (en banc); see also Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001) ("[P]retrial detainees have a constitutional right, under the Due Process Clause of the Fourteenth Amendment, not to have their serious medical needs met with deliberate indifference on the part of the confining officials."); Cadena v. El Paso County, 946 F.3d 717, 727 (5th Cir. 2020) ("The standard [for pretrial detainees] is the same as that for a prisoner under the Eighth Amendment.") (citations omitted).

To state an actionable claim for the denial of adequate medical care a prisoner must demonstrate that prison officials acted with "deliberate indifference to a prisoner's serious illness or injury[.]" Estelle v. Gamble, 97 S. Ct. 285, 291 (1976). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 114 S. Ct. 1970, 1984 (1994).

The deliberate indifference standard is an "extremely high" one to meet. Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of

-10-

negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). A showing of deliberate indifference under these circumstances requires the prisoner to demonstrate that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. (citation and internal quotation marks omitted).

Spates complains that medical providers elected to treat him at the Jail with Tylenol and Pedialyte rather than send him to the hospital after he tested positive for COVID-19 on September 19, 2020.[16] A question about whether "additional diagnostic techniques or forms of treatment [are] indicated is a classic example of a matter for medical judgment." Estelle, 97 S. Ct. at 293. To the extent that Spates takes issue with the level of care that he received, mere disagreement with medical treatment does not state a claim for deliberate indifference to serious medical needs. See Gobert, 463 F.3d at 346; see also Bergeron v. Terrebonne Parish Sheriff's Department, Civil Action No. 20-2144, 2021 WL 5042732, at *8 (E.D. La. July 12, 2021) (rejecting a claim by several inmates that jail medical providers denied them adequate medical care by

---

[16]Complaint, Docket Entry No. 1, p. 4; Plaintiff's MDS, Docket Entry No. 7, pp. 3, 5 (Responses to Questions 4C and 5E).

refusing to send them to a hospital after they tested positive for COVID-19), Report and Recommendation adopted, 2021 WL 5039631 (E.D. La. Oct. 30, 2021). Because Spates does not demonstrate that he was denied care with deliberate indifference or that he has a valid claim against the defendants, his Complaint will be dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

## IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. The Prisoner's Civil Rights Complaint filed by David Eugene Spates (Docket Entry No. 1) is **DISMISSED with prejudice.**

2. The dismissal will count as a **STRIKE** for purposes of 28 U.S.C. § 1915(g).

**The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the plaintiff. The Clerk will also send a copy of this Memorandum Opinion and Order to the Manager of Three Strikes List at Three_Strikes@txs.uscourts.gov.**

**SIGNED** at Houston, Texas, on this the 20th day of July, 2023.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE